SHELLEY N. RIPLEY, WSBA #28901
MATTHEW W. DALEY, WSBA # 36711
WITHERSPOON · KELLEY
422 West Riverside Avenue, Suite 1100
Spokane, Washington   99201-0300
Telephone: (509) 624-5265
Facsimile: (509) 458-2728
snr@witherspoonkelley.com
mwd@witherspoonkelley.com
*Counsel for the Plaintiff*

Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON, AT SEATTLE

BRUCE P. KRIEGMAN, solely in his capacity as court-appointed Chapter 11 trustee for LLS America, LLC,

    Plaintiff,

RONALD PONTON and TOMIKA PONTON,

    Defendants.

Case No.  2:22-CV-00307

RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER

ORAL ARGUMENT REQUESTED

## I. NATURE OF THE MOTION & RELIEF REQUESTED

This case arises in the context of a much-publicized Ponzi Scheme that was litigated in connection with LLS America, LLC's Chapter 11 bankruptcy.  The core bankruptcy action and various adversary proceedings were litigated before the District and Bankruptcy Courts of the Eastern District of Washington, as well as before the Ninth Circuit Court of Appeals.  One of those adversary proceedings was against Ronald & Tomika Ponton, and that adversary proceeding resulted in the judgment that is at issue in this garnishment proceeding.

Ronald Ponton, Sr. and Tomika Ponton were named as defendants in that adversary proceeding. Ronald Ponton, Sr. and Tomika Ponton appeared and answered. However, Mr. & Mrs. Ponton did not show up for the scheduled trial, and the Honorable Rosanna Malouf Peterson of the Eastern District of Washington entered a $120,670.59 judgment against Ronald and Tomika Ponton, (hereinafter "the Ponton Judgment"). The Ponton Judgment contains a scrivener's error; it misidentifies Mr. Ponton as "Ronald Ponton, Jr." The Ponton Judgment correctly identifies Mrs. Ponton, Mr. Ponton's wife.

Once the judgment was domesticated in King County Superior Court, the Trustee had a writ of garnishment issued for all accounts held by JP Morgan Chase Bank, N.A. (hereinafter "Chase Bank"). The writ of garnishment at issue was properly served upon Chase Bank as the garnishee defendant, and Chase Bank properly froze three accounts belonging to Mr. Ponton, in the total amount of $58,448.88. It is that $58,000 garnishment that Mr. & Mrs. Ponton are asking the Court to enjoin.

Contrary to Mr. & Mrs. Ponton's arguments, both the Ponton Judgment and the King County garnishment are proper and valid – there is, therefore, no likelihood of success on the merits. Mr. & Mrs. Ponton's effort to use a typo to invalidate a Federal Court judgment is without legal or factual support – the record clearly shows that Mr. Ponton, Sr. is the judgment debtor. Mr. & Mrs. Ponton's motion for a temporary restraining order is contrary to Washington's Garnishment Act. Under the act's plain terms, a judgment creditor may garnish accounts held by a financial institution without limitation regarding "where" those accounts are held. That is precisely what the Trustee did in this instance. The garnishment is lawful, valid, and must be permitted to proceed.

RESPONSE TO MOTION FOR TEMPORARY
RESTRAINING ORDER: 2

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

Perhaps more fundamentally, the Court lacks subject matter jurisdiction to consider Mr. & Mrs. Ponton's motion. Diversity is the only possible basis for federal court jurisdiction over this matter. However, a garnishment is only removable where it is pursued as a separate action, as opposed to as an element of a larger action. There is no dispute that this garnishment was brought as a separate action (in King County Superior Court); however, as a separate action, the amount in controversy must be determined by the amount of the disputed garnishment, rather than by the amount that was in controversy in the underlying action. That is precisely because, the underlying judgment is not (and cannot be) at issue in this matter. It is undisputed that approximately $58,000 is at issue in this garnishment action, and that amount is insufficient to support federal court jurisdiction.

Lastly, even were an injunction appropriate (which it is not), Mr. & Mrs. Ponton are not asking that the status quo be preserved; instead, they are asking that the disputed funds be unconditionally released. That would not preserve both parties' rights while the garnishment's validity could be litigated on its merits. That would render the garnishment moot and futile. This is particularly true considering Mr. & Mrs. Ponton's claimed financial condition. Releasing the disputed $58,000 to Mr. & Mrs. Ponton would permanently deprive the Trustee of all rights to the funds. Were the Court inclined to grant relief to preserve the status quo between the parties, the appropriate relief would be to order the disputed funds paid into the Court's registry pending a further order of the Court. Holding the funds in the Court's registry would preserve all parties' claims to and rights with respect to the disputed funds and allow the parties' competing positions to be resolved on the merits.

The Trustee respectfully asks the Court to deny Mr. & Mrs. Ponton's motion for a temporary restraining order. Mr. & Mrs. Ponton cannot meet their burden to show any

RESPONSE TO MOTION FOR TEMPORARY
RESTRAINING ORDER: 3

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

likelihood of success on the merits. Mr. & Mrs. Ponton cannot meet their burden to show that the Court has subject matter jurisdiction. And Mr. & Mrs. Ponton are not seeking relief to preserve the status quo. Mr. & Mrs. Ponton cannot meet the heavy burden that they bear at the temporary restraining order stage of this litigation.

## II.  FACTUAL BACKGROUND

1. The underlying judgment relates to a bankruptcy filed in the Eastern District of Washington's Bankruptcy Court (the "Bankruptcy Court"). The debtor, LLS America, LLC and related companies ("LLS"), operated a Ponzi scheme that raised over $137 million and defrauded more than 500 "lenders" who invested in LLS' ill-begotten venture of making short-term/payday loans. The scheme involved using the money of later "lenders" to repay earlier "lenders." The 500 defrauded "lenders" ended up holding the empty bag while LLS' founder diverted more than $4.4 million to her personal use and another $3 million to pay to a select group of friends as "commissions." In all, LLS' founder (Doris Nelson), never contributed one cent in capital to LLS, but raised more than $137 million from "lenders" from 1997 through mid-2009 by promising exorbitant returns – obviously, LLS had no capability of paying the promised returns. Declaration of Shelley N. Ripley (filed herewith), ¶ 2. (hereinafter "Ripley Declaration").

2. On July 16, 2011, the Trustee filed an adversarial action against Mr. and Mrs. Ponton to recover over $120,000 in fraudulent transfers related to their participation in the LLS Ponzi scheme. *Id*. at ¶ 3, Exhibit A.

3. The Bankruptcy Court had jurisdiction over Mr. & Mrs. Ponton in that adversary proceeding because Mr. & Mrs. Ponton had previously voluntarily elected to file a Proof of Claim in the LLS bankruptcy. *Id*. at ¶ 4, Exhibit B.

4.	Contrary to their assertion that they have no connection to the State of Washington, Mr. & Mrs. Ponton participated in a Ponzi scheme in the State of Washington. They were among a group of "lenders" that profited from the losses of later lenders in the Ponzi scheme – this was the underlying basis for the Trustee's successful adversary claim. *Id*. at ¶ 2.

5.	On September 1, 2011, Mr. & Mrs. Ponton filed an answer to the Trustee's complaint in the adversary proceeding. Ripley Declaration, ¶ 5, Exhibit C.[1]

6.	January 20, 2015 was the date set for trial in the Trustee's adversary proceeding against Mr. & Mrs. Ponton; despite making a formal claim in the bankruptcy proceeding and despite formally answering the adversary allegations, Mr. & Mrs. Ponton failed to appear for trial. *Id*. at ¶ 8.

7.	On May 12, 2015, the District Court entered Findings of Facts and Conclusions of Law against Mr. & Mrs. Ponton. *Id*. at ¶ 9, Exhibit F.  Through those Findings of Fact and Conclusions of Law, the District Court concluded that (pursuant to 11 U.S.C. § 548(a), 544, 550 and 551 and RCW 19.40.041(1) and 19.40.071) the Trustee was entitled to judgment, in the amount of $117,411 plus applicable interest, against "**Ronald Ponton, Sr. and Tomika Ponton.**" *Id*. at ¶ 10, Exhibit F, p. 22 (emphasis added).

---

[1] After Mr. & Mrs. Ponton answered the adversary proceeding, the bankruptcy reference was removed and the matter was transferred to U.S. District Court for the Eastern District of Washington, before the Honorable Rosanna Malouf Peterson.  Ripley Declaration, ¶ 6, Exhibit D.  Thereafter, Mr. & Mrs. Ponton's adversary pleading was consolidated into District Court Case No. 12-CV-668-RMP for purposes of trial. *Id*. at ¶ 7, Exhibit C.

8.      In accord with those findings and conclusions, the District Court entered judgment against Mr. & Mrs. Ponton. That judgment was entered on June 16, 2015. *Id*. at ¶ 11, Exhibit G.

9.      That judgment (and the accompanying judgment summary) contains a typographical error by which Mr. Ponton is incorrectly identified as: "Ronald Ponton Jr."[2] *Id*.

10.     On January 28, 2022, the Trustee filed a notice of filing foreign judgment in the King County Superior Court, under Case No. 22-2-01515-2 SEA. *See* ECF 1, Exhibit A. Mr. & Mrs. Ponton were timely served but failed to object. Ripley Declaration, ¶ 12, Exhibit H.

11.     On February 10, 2022, the Trustee filed an application for writ of garnishment stating "the Judgment Debtors Ronald and Tomika Ponton" were indebted to the Trustee and that Chase Bank (the "Garnishee") was indebted to Mr. & Mrs. Ponton "in amounts exceeding those exempted from garnishment by any state or federal law." *See* ECF 1, Exhibit B.

12.     The King County Superior Court Clerk issued a writ of garnishment against Mr. & Mrs. Ponton that was served upon Chase Bank. Ripley Declaration, ¶ 13, Exhibit I.

13.     Though Mr. & Mrs. Ponton imply that the Trustee was seeking to garnish funds belonging to Ronald Ponton, Jr., the Trustee's communications with Chase Bank identified Mr. & Mrs. Ponton by: (i) name; (ii) date of birth; and (iii) social security number judgment. *See* ECF 7, Exhibit A, pp. A001-A003.

---

[2] The Trustee is in the process of requesting the District Court to rectify the error *nunc pro tunc* pursuant to FRCP 60(a).

RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER: 6

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

14. It is notable, that Mr. & Mrs. Ponton do not deny that the dates of birth and social security numbers provided by the Trustee correctly identify them.

15. Pursuant to the writ of garnishment, Chase Bank properly froze three accounts: a sole proprietor account, a checking account and a savings account, all in the name of Ronald Ponton. *See id*. at ¶ 4.

16. The total amount being held by Chase Bank under the writ of garnishment is $58,448.88. *See id*. at ¶¶ 4-5.

17. Only the funds in deposit in the sole proprietor account are at issue in this case.

### III.  ARGUMENT

**A.  MR. & MRS. PONTON CANNOT PREVAIL ON THE MERITS BECAUSE THEIR POSITION IS CONTRARY TO WASHINGTON'S GARNISHMENT ACT.**

#### 1. *The Trustee's judgment is valid.*

Mr. & Mrs. Ponton are not entitled to injunctive relief because they cannot establish that they are likely to prevail on the merits. There is no legitimate dispute that the Trustee holds a valid judgment against Mr. & Mrs. Ponton. The judgment results from a lengthy adversarial action regarding a Ponzi scheme that involved Mr. & Mrs. Ponton. Mr. & Mrs. Ponton participated in the underlying action by filing a Proof of Claim and by answering the Trustee's complaint. Ripley Declaration, ¶ 2-4, Exhibits A & B. Following a trial on the merits, the District Court issued Findings of Fact and Conclusions of Law, including the following unambiguous determination against Mr. & Mrs. Ponton:

> Pursuant to 11 U.S.C. § 548(a), 544, 550 and 551 and RCW 19.40.041(1) and 19.40.071, the Trustee is entitled to and is granted a judgment for the benefit of the Liquidating Trust of Debtor against **Ronald Ponton, Sr. and Tomika Ponton** in the amount of $117,411.00 USD, plus pre-judgment interest from July 21, 2009, at the applicable federal judgment rate and post-judgment interest at the

RESPONSE TO MOTION FOR TEMPORARY
RESTRAINING ORDER: 7

**WITHERSPOON · KELLEY**
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

federal judgment rate from the date of judgment to the date the judgment is paid in full, see 28 U.S.C. § 1961.

*Id*. at Exhibit F, p. 22 (emphasis added).

It is true that a typographical error led to the Judgment naming Ronald Ponton, Jr. The overall course of the adversary litigation, however, makes it undeniable that "Jr." was nothing beyond a scrivener's error. Nevertheless, the correct judgment debtor was identified during the garnishment process by last name, date of birth and social security number. Mr. Ponton's accounts were correctly garnished.

### 2. *The King County Superior Court was authorized to issue the writ of garnishment*.

Mr. & Mrs. Ponton's motion fundamentally misinterprets Washington's Garnishment Act, RCW 6.27 *et seq*.[3] Washington's Superior Court Clerks are empowered to issue garnishment writs returnable to their respective courts for the benefit of a judgment creditor. RCW 6.27.020. Here, the Trustee holds a judgment that was validly domesticated in the King County Superior Court. Once domesticated, the prior federal judgment has the same force and effect as a judgment issued, in the first instance, by the King County Superior Court. RCW 6.36.025(1) ("The clerk shall treat the foreign judgment in the same manner as a judgment of the superior court of this state."). The King County Superior Court Clerk was, therefore, fully authorized to issue the subject writ of garnishment.

---

[3] Mr. & Mrs. Ponton confuse the terms "garnishee defendant" and "defendant." Chase Bank is the garnishee defendant, and Mr. & Mrs. are the defendants/judgment debtors.

RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER: 8

**WITHERSPOON · KELLEY**
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

### 3. *The Trustee's application for the writ of garnishment was proper and accurate.*

Contrary to Mr. & Mrs. Ponton's arguments to the contrary, the Trustee's application never indicated that Mr. & Mrs. Ponton had property located in the state of Washington nor did the application state that Mr. & Mrs. Ponton had bank accounts located in King County, Washington. Washington State law is not so limited. Instead, the application, in compliance with RCW 6.27.060, stated that Chase Bank has a business address in King County, Washington, and that Chase Bank was indebted to Mr. & Mrs. Ponton in amounts exceeding those exempted from garnishment by any state or federal law, or that Chase Bank has possession or control of personal property or effects belonging to the Defendants which are not exempted from garnishment by any state or federal law. Chase Bank irrefutably does business in Seattle, Washington (King County) and throughout Washington. And based upon its answer, Chase Bank was indebted to Mr. & Mrs. Ponton in amounts exceeding those exempted from garnishment. There simply was no misrepresentation.

This garnishment was conducted in full accordance with Washington State law. **Mr. & Mrs. Ponton true objection is to the fact that Washington's garnishment statute permits garnishment of accounts without regard to the account-holder's physical location or place of domicile**. That, however, is a question than can be resolved by the Court.

### 4. *The Trustee garnished the Defendants' Chase Bank deposit accounts, not the Defendants' property held by Chase Bank.*

Mr. & Mrs. Ponton also misread RCW 6.27.080. RCW 6.27.080 allows a judgment creditor to name a particular branch of financial institution in a writ of garnishment **or** to name the financial institution in a garnishment proceeding. If the financial institution is named, the writ of garnishment shall be effective to attach deposits (**wherever located**) and compensation

payable for personal services due the defendant from the financial institution. RCW 6.27.080. On the other hand, if a writ of garnishment names a single branch as garnishee defendant, then the writ shall be effective only to attach the deposits, accounts, credits, or other personal property of the defendant (i.e. property located in a safe deposit box) (excluding compensation payable for personal services) in the possession or control of that particular branch. RCW 6.27.080. Washington's garnishment act, therefore, empowers a judgment creditor to garnish all accounts held by a financial institution, regardless of the judgment debtor's location – so long as the financial institution does business in relevant county.

Chase Bank undeniably does business in King County, and the King County Superior Court undeniably had jurisdiction over Chase Bank.  The Trustee, as was its right, issued the subject writ to Chase Bank the financial institution, rather than any specific branch of Chase Bank. By naming the financial institution, the writ attached to Mr. & Mrs. Ponton's deposits without regard to where Mr. & Ponton were located, were domiciled, or from where Mr. & Mrs. Ponton accessed their Chase Bank accounts.

**5.** *<u>The Lloyd case is not applicable to this matter.</u>*

Mr. & Mrs. Ponton's reliance on a 1936 taxation case is misplaced.  See *In Re Lloyd's Est.*, 185 Wn. 61, 65 (1936).  The *Lloyd* Court held that the State of Washington was empowered to levy inheritance tax on bank deposits held in the State of Washington by a decedent whose domicile was in Canada and whose sole heir resided in Wales.  *Lloyd* does not interpret, construe, or limit the plain language of Washington Garnishment Act.

**6.** *<u>The similarity of name procedure is not applicable.</u>*

Finally, Mr. & Mrs. Ponton's assertion that Chase Bank failed to follow the similarity of name procedures as outlined in RCW 6.27.290 is unavailing.  This matter does not present a

RESPONSE TO MOTION FOR TEMPORARY
RESTRAINING ORDER: 10

**WITHERSPOON · KELLEY**
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

dispute regarding similarity of names. Mr. & Mrs. Ponton are the judgment debtors – there is no dispute regarding this fact. And the Trustee's writ documentation identified Mr. & Mrs. Ponton by: last name, date of birth and social security number. This is not a case of mistaken identity, the Trustee had a right to garnish Mr. & Mrs. Ponton's accounts, and the Trustee did so. Chase Bank correctly identified Mr. & Mrs. Ponton based upon the identifying information that they were provided, and the bank properly garnished Mr. & Mrs. Pontons' accounts. Again, Mr. & Mrs. Ponton's true issue is with Washington State law permitting this garnishment.

**B.    MR. & MRS. PONTON FACE NO HARM, MUCH LESS IRREPARABLE HARM, IN THE ABSENCE OF TEMPORARY RESTRAINT BECAUSE THE WASHINGTON GARNISHMENT ACT AFFORDS THEM MULTIPLE AVENUES FOR REDRESS.**

To obtain a preliminary injunction, Mr. & Mrs. Ponton are required to establish "that irreparable harm is likely, not just possible." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "Indeed, irreparable harm has been described as '[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction.'" *Native Ecosystems Council v. U.S. Forest Service*, 2011 WL 4015662, at *7 (D. Idaho Sept. 9, 2011) (quoting 11A Wright & Miller, Fed. Prac. & Proc. § 2948). Mr. & Mrs. Ponton must demonstrate irreparable harm through a "clear showing" of "substantial proof." *Id*.

Mr. & Mrs. Ponton assert that they will suffer monetarily if the restraining order is not granted. Monetary damages do not constitute "irreparable harm" justifying an equitable remedy. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 n.16 (9th Cir. 2009) (holding that if the injury was primarily financial, the balance would not tip because the injury would not be considered irreparable).

Perhaps more importantly, Washington's garnishment act contains express remedies that Mr. & Mrs. Ponton have chose to ignore. First, they could have claimed exemptions under RCW

RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER: 11

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

6.27.160. They failed to do so. Second, they could have controverted Chase Bank's answer, pursuant to RCW 6.27.210. Again, they failed to do. Finally, they could have requested the Court to quash the writ of garnishment. They did not. Mr. & Mrs. Ponton should not be permitted to ignore the express statutory remedies that were available to them. Mr. & Mrs. Ponton's motion for a temporary restraining order should be denied.

C. **THE COURT IS WITHOUT JURISDICTION TO CONSIDER MR. & MRS. PONTON'S MOTION.**

The Court has an obligation to examine subject matter jurisdiction before deciding any issue on the merits. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004). Mr. & Mrs. Ponton's Notice of Removal is inadequate and does not properly invoke federal jurisdiction. In the interest of brevity and to avoid duplication, the Trustee respectfully incorporates the arguments and authorities contained in its Motion for Remand, which is filed contemporaneously herewith.

D. **MR. & MRS. PONTON'S MOTION SEEKS TO UPSET, RATHER THAN PRESERVE, THE STATUS QUO.**

"The purpose of a temporary restraining order is to preserve an existing situation *in statu quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction.' " *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 107 (2d Cir. 2009) (*quoting Pan Am. World Airways, Inc. v. Flight Eng'rs' Int'l Ass'n, PAA Chapter*, 306 F.2d 840, 842-43 (2d Cir. 1962)); *see also Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 226 (6th Cir. 1996) ("[T]he purpose of a TRO under Rule 65 is to preserve the status quo so that a reasoned resolution of a dispute may be had."); *Bronco Wine Co. v. U.S. Dep't of Treasury*, 997 F. Supp. 1309, 1313 (E.D. Cal. 1996) ("The purpose of a TRO is to preserve the status quo pending a full

hearing on a preliminary injunction."). The Court must, therefore, focus the analysis on whether the status quo would materially change before a preliminary injunction could be heard.

It is precisely because a Temporary Restraining Order exists solely to preserve the *status quo* until the parties can be heard on the merits that FRCP 65 requires the Court to condition relief upon appropriate security. No temporary restraining order can issue without the moving party posting adequate security to protect the party who is restrained against any damage that would be caused by the restraint. FRCP 65.

Mr. & Mrs. Ponton are not asking that the *status quo* be preserved. Instead, Mr. & Mrs. Ponton are asking the Court to release the disputed $58,000 to them, without any countervailing security. This is especially concerning given the fact that Mr. & Mrs. Ponton's moving papers go to some length to describe the direness of their financial condition. Mr. & Mrs. Ponton are essentially asking the Court to give them full and final relief through a temporary restraining order.

Even accepting every allegation made by Mr. & Mrs. Ponton as true there is, at a maximum, a dispute regarding whether they or the Trustee is entitled to the disputed $58,000. Preserving the *status quo*, therefore, would entail preserving the funds pending resolution of the parties' competing claims to the money. To prevent the Trustee from exercising its rights under the Washington State Garnishment Act, Mr. & Mrs. Ponton should be made to post security in an amount equal to $58,000, plus all interest that will accrue during the parties' litigation, and plus all costs and legal fees that the Trustee is likely to incur in this matter.

A simpler option exists – the Court could simply hold the $58,000 in the registry of the Court pending resolution of the parties' dispute. That would preserve the *status quo*. That would preserve all parties' rights. And, if the Court believes that any relief is appropriate, that would be

the most efficient and equitable way to resolve the issue. Thus, if the Court is disinclined to dismiss Mr. & Mrs. Ponton's action, the Trustee respectfully asks the Court to hold the disputed funds in the Court registry pending a resolution of the parties' dispute.

### IV.  CONCLUSION

Mr. & Mrs. Ponton are asking the Court to deny the Trustee the benefits of a valid garnishment under a valid order. Mr. & Mrs. Ponton are asking the Court to do so in direct opposition to the unambiguous provisions of Washington's Garnishment Act. Mr. & Mrs. Ponton are asking the Court to do so despite their wholesale failure to invoke any of the varied remedies made available to them by Washington's Garnishment Act. And Mr. & Mrs. Ponton are asking the Court to do so despite a plain lack of subject matter jurisdiction. The Trustee, therefore, respectfully asks the Court to deny Mr. & Mrs. Ponton's motion for a temporary restraining order.

Respectfully submitted this 21st day of March, 2022.

WITHERSPOON • KELLEY

*s/ Shelley N. Ripley*
Shelley N. Ripley, WSBA #28901
snr@witherspoonkelley.com

*s/Matthew W. Daley*
Matthew W. Daley, WSBA # 36711
mwd@witherspoonkelley.com
*Counsel for the Plaintiff*

RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER: 14

**WITHERSPOON · KELLEY**
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

# CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of March, 2022:

1. I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following:

> Elizabeth Hebener Norwood at elizabether@gnlawseattle.com
> *Counsel for the Plaintiff*
>
> Matthew Green at matt@gnlawseattle.com
> *Counsel for the Plaintiff*
>
> Christina Latta Henry at chenry@hdm-legal.com
> *Counsel for the Defendants*
>
> Venus Yvette Springs at vsprings@springslawfirm.com
> *Counsel for the Defendants*

2. I caused to be mailed by United States Postal Service the document to the following at the address listed below:

> NONE

**WITHERSPOON KELLEY**

  *s/ Matthew W. Daley*
MATTHEW W. DALEY, WSBA # 36711
Email: mwd@witherspoonkelley.com